# MAXIM MAXIMOV, LLP

<u>  ATTORNEYS AT LAW  </u>

1701 AVENUE P
BROOKLYN • NEW YORK • 11229

EMAIL: M@MAXIMOVLAW.COM
TELEPHONE: (718) 395-3459
FACSIMILE: (718) 408-9570

April 27, 2018

**<u>VIA ECF</u>**
Honorable Chief Judge Dora Lizette Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      RE:    **Case No. 1:17-cv-05688-DLI-RML**
                **Dovid Misonzhnik v. Central Credit Services LLC**

Dear Honorable Chief Judge Irizarry:

      I represent the Plaintiff in the above-referenced matter. I am writing in response to Your Honor's Order to Show Cause dated April 9, 2018.

      First and foremost, thank you for providing me with the opportunity to respond and clarify the issues raised by Your Honor. The present matter involves an action against Central Credit Services LLC in which the Plaintiff alleges that Defendant violated the FDCPA, 15 U.S.C. §§ 1692 et seq. A status conference is scheduled before the Honorable Magistrate Judge Robert M. Levy for April 30, 2018 at 2:00 p.m.

      In the instant matter, Plaintiff filed for Chapter 7 Bankruptcy on May 18, 2017 (In re Misonzhnik, No. 17-42516-nhl, Bankr. E.D.N.Y.) and in the bankruptcy schedules filed on May 22, 2017, Plaintiff responded to the question titled "[c]laims against third parties, whether or not [he had] filed a lawsuit or made a demand for payment," by listing "[p]otential FDCPA claim(s)" with a $0.00 value. See In re Misonzhnik, Dkt. Entry No. 12.

      Your Honor references Misonzhnik v. Alltran Fin., LP, No. 17-cv-6683 (BMC) (E.D.N.Y.) in which the Honorable Judge Brian M. Cogan's Memorandum Decision and Order dated March 13, 2018 granted defendant's motion to dismiss (Dkt. Entry No. 15). Please note that a Notice of Appeal was filed on April 12, 2018 (Dkt. Entry No. 17). Plaintiff does not dispute that Section 521 of the Bankruptcy Code (11 U.S.C. § 101, et seq.) (the "Code") imposes an obligation on bankruptcy debtors to file various financial statements with the court, including

schedules of assets and liabilities. It is further not disputed that the assets contemplated by Sections 521 and 541 of the Code include causes of action owned by a debtor at the time of filing. Moreover, Plaintiff was discharged and the bankruptcy case was closed on September 14, 2017. See In re Misonzhnik, Dkt. Entry No. 22. Plaintiff's instant matter was filed on September 28, 2017. Accordingly, the debtor was discharged from bankruptcy prior to this action being commenced. As these facts are not in dispute, the question in this case becomes "Did Plaintiff sufficiently disclose their property interests in their claims in their bankruptcy petition?" Because this question must be answered in the affirmative, Plaintiff should not be sanctioned.

As this Court recently observed in the context of an FDCPA case, Section 521 of the Code "does not provide guidance as to the level of detail necessary in a schedule of assets and, as one court in this Circuit noted, few courts have addressed the level of specificity with which debtors must describe assets in order to comply with 11 U.S.C. § 521(a)(1)." *Eun Joo Lee v. Forster & Garbus, LLP*, 926 F.Supp.2d 482, 489 (E.D.N.Y. 2013) quoting *Tilley v. Anixter Inc.*, 332 B.R. 501, 509 (D.Conn. 2005); see also *Kuehn v. Cadle Co.*, No. 5:04-CV-432-Oc-10GRJ, 2007 WL 809656, at *4 (M.D. Fla. Mar. 15, 2007) ("The statute does not provide any guidance as to the level of specificity required" when listing assets on a bankruptcy Schedule B); *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992) aff'd 153 B.R. 601 (B.A.P. 9th Cir. 1993) aff'd 24 F.3d 247 (9th Cir. 1994) ("There are . . . no bright-line rules for how much itemization and specificity is required."). Rather, the bankruptcy schedules have generally been held subject to a "rule of substantial compliance." *Id.*, citing Fed. R. Bankr. P. 9009 (Advisory Committee's note).

The Court observed in *Eun Joo Lee, supra*, "a review of authority from outside of this circuit and from courts of concurrent jurisdiction inside this circuit reveals that courts typically look at whether the schedule gives the trustee enough information about the claim so he or she can decide if the claim is worth pursuing." *Id.*, at 489 citing *In re Furlong*, 660 F.3d 81, 87 (1st Cir. 2011). As the *Furlong* court held, "a debtor is required only to do enough itemizing to enable the trustee to determine whether to investigate further." *Id.*, at 87 quoting *Payne v. Wood*, 775 F.2d 202, 207 (7th Cir. 1985). It has been held that this obligation is satisfied where a debtor provides a description sufficient to give the trustee enough information to determine whether the debtor may have a claim against a third party, as Section 704 of the Code imposes an equal obligation on the trustee to "investigate the financial affairs of the debtor." *Boodram v. Coomes*, No. 1:12-CV-00057-JHM, 2015 WL 1248809, *5 (W.D. Ky. Mar. 18, 2015). See also:

> *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116 (2d Cir. 2008), involves a case in which former sellers of Nationwide insurance policies, sued on several claims arising out of Nationwide's termination of their relationship. The plaintiffs argued that they had no duty to disclose the existence of their policies because they were not formally incorporated until after the date of the bankruptcy petition, and therefore were not a part of the bankruptcy estate. Although the court disagreed, the court reasoned that it was admitted during deposition testimony that the policies were formed prior to filing the bankruptcy petition. This is contrasted in the instant matter in which the Plaintiff DID NOT possess a claim against Defendant until AFTER the bankruptcy case has already been closed. The

Bankruptcy Code is premised on full and complete disclosure of the debtor's finances. A debtor who "elects to avail himself of the benefits of the federal bankruptcy laws by the filing of a petition ... can no longer expect to have any financial secrets." *In re Trout*, 108 B.R. 235, 238 (Bankr.D.N.D. 1989).

*Payne v. Wood*, 775 F.2d 202, 206 (7th Cir.1985), cert. denied, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986) involves a case in which the debtors filed schedules indicating property worth $1,205.00 and subsequently filed a claim with their insurance company after their house burned down, increasing the amount and requesting $17,389.47, thereby creating the issue of whether the property was valued at $1,205.00 or whether the property was valued at $17,389.47, and who receives the money – the debtor or the trustee. This case is contrasted with the instant matter as *Payne* was not honest with the reporting of assets. The issue in Payne was whether the exempt property was listed separately with sufficient detail to put the trustee and interested parties on notice of questionable claims. Here, the potential FDCPA claim was in fact listed separately.

*Kunica v. St. Jean Financial, Inc.*, 63 F. Supp. 2d 342 (S.D.N.Y. 1999) involves claims as to breach of oral agreement, fraud and tortious interference with business relations. The Opinion found that: "It would appear that Sci-O-Tech was aware of the Claims since in a pre-bankruptcy letter agreement executed by Sci-O-Tech on May 7, 1994, with an investor group who was going to run the operations of Sci-O-Tech and find a lender to take out Fremont's position, Kunica, as the sole shareholder of Sci-O-Tech, contractually required the investor group to `engage counsel selected by [the investor group] for the purpose of commencing legal action against St. Jean Financial, Walter Rogers and such other appropriate parties as said counsel may determine for breach of the April 4, 1994 agreement entered into between Sci-O-Tech and St. Jean.' Accordingly, Sci-O-Tech did not meet its affirmative obligation under 11 U.S.C. § 521(1) to disclose to the bankruptcy court all of the assets that belonged to its bankruptcy estate." *Kunica*, 233 B.R. at 56. This is contrasted in the instant matter in which the Plaintiff DID NOT possess a claim against Defendant until AFTER the bankruptcy case has already been closed.

In sum, the debtor's obligation is satisfied where he or she gives the trustee at least "inquiry notice." *Id.*, at *4 citing *In re Bonner*, 330 B.R. 880, *5 (B.A.P. 6th Cir. 2005). It is important to note that <u>the Trustee was fully aware of the potential claims, the Trustee is aware that potential FDCPA claims have a maximum value of $1,000.00, the Trustee has examined the Plaintiff and after reviewing the petition and the Plaintiff explaining the potential claims, the Trustee abandoned the claims and has discharged the Plaintiff. The information provided to the Trustee was sufficient information for the Trustee to make an informed decision</u>. Plaintiff sufficiently disclosed its potential claim in his bankruptcy petition. At the time of disclosure, the value of the claim was $0.00. At the time of filing the bankruptcy petition, there was no current value since the claim itself was only a potential of a potential, meaning that the potential idea of any FDCPA claim was just a potential claim and even if the potential FDCPA claim would

actually end up being filed one day, there was no guarantee of any recovery, hence there was only a potential claim which if actualized would still only yield a potential for recovery. The potential FDCPA claims were just a potential claim and the truthful current value of the potential claim at the time of the filing of the bankruptcy petition had no value.

In the present action, it is undisputed that Plaintiff listed as exempt property his interest in a potential cause of action for violations of the Fair Debt Collection Practices Act. Neither the trustee nor any creditors filed an objection to plaintiff's claimed exemption for a potential FDCPA action. As explained *infra*, it is beyond cavil that Plaintiff gave the trustee "inquiry notice" sufficient to allow the trustee to "investigate the financial affairs of the debtor."

Indeed, cases reinforcing this point are legion. For instance, in *Bonner, supra*, the Chapter 7 debtors listed on Schedule B an "Auto Accident Claim" with an unknown value. A few months after the trustee filed a no-asset report, she moved to reopen the bankruptcy in order to administer a personal injury claim of the debtors, which claim she asserted was not previously scheduled. *Id.*, at *2. The debtors filed an objection to the trustee's motion, disputing the contention that the personal injury claim had not been previously scheduled or administered. They argued that the personal injury claim the trustee was seeking to administer was the very same auto accident claim they had scheduled and claimed was exempt, and that the trustee had abandoned this asset by filing the no-asset report. The trustee responded to the objection and asserted that the debtors' prior scheduling of the auto accident claim did not constitute the scheduling of a personal injury claim because "[a]n auto accident claim is . . . indicative of a property damage claim arising from a vehicular collision." *Id.* The bankruptcy court granted the trustee's motion and the debtors appealed. In reversing, the Court of Appeals held that the debtors' scheduling of an "Auto Accident Claim" with an **unknown value** was sufficient to put the trustee on **"inquiry notice such that [s]he could investigate the potential value of the claim with its various components,"** including any claim for personal injury. *Id.*, at 5; see also *Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001) (debtor's listing of "song rights" as an asset on Schedule B with an "unknown" value was sufficient to give the trustee "inquiry notice" and would not "forestall a proper investigation of the asset").

Furthermore, potential claims are understood to have some potential monetary value. Therefore, even if a potential claim is listed with a current value of $0.00, the fact that there is a potential claim put's the trustee on sufficient notice. Unlike an auto accident claim and/or song rights claim where the potential value can be the sky is the limit, an FDCPA claim is limited to a maximum value of $1,000.00, which the trustee was aware of. The case of *Nielsen v. Dickerson*, No. 98-cv-5909, 1999 WL 350649 (N.D. Ill. May 20, 1999), is particularly instructive. In *Nielsen*, the plaintiff's May 7, 1998 bankruptcy petition made no reference to a potential FDCPA claim based on a collection letter she received four months earlier from Dickerson & Associates. *Id.*, at 1. On June 4, 1998, the plaintiff filed an amended Schedule B, which again made no reference to any potential FDCPA claim. *Id.* On July 26, 1998, the plaintiff retained counsel to prosecute an FDCPA claim against Dickerson & Associates, and two (2) days later the plaintiff filed another amended Schedule B and Schedule C, which, for the first time, referenced her contemplated cause of action against Dickerson & Associates and exempted such. *Id.* at 2. The plaintiff was granted a full discharge approximately one month later, and on September 22, 1998, she filed an FDCPA class action. *Id.* A second defendant in the action, Household Credit, argued

that the claim against it belonged to the bankruptcy trustee because it was not listed on the original Schedule B, nor on any of the amended Schedules B or Schedule C.  *Id.*, at 4.  In rejecting the argument, the Court held:

> **"We do not think Nielsen forfeited her claim against Household Credit (or more appropriately, relinquished her rights in that claim to her bankruptcy estate) simply because she failed to identify Household Credit in her bankruptcy schedules as a potential defendant in the present action. Although we can envision a scenario in which a bankruptcy petitioner manipulates her bankruptcy schedules to 'hide,' from the trustee or her creditors, a deep-pocketed, potential defendant (resulting in the parties' failure to object to the inclusion of the petitioner's interest in such action as exempt property), such fears are not present here, particularly where Nielsen's statutory damages are capped at $1,000."**

*Id.*, at 6; See also *Bigalke v. Creditrust Corp.*, No. 99 C 2303, 2001 WL 1098047, at 7-10  (N.D. Ill. Sept. 14, 2001).

Likewise, the case of *Fedotov v. Peter T. Roach and Associates*, P.C., 354 F.Supp.2d 471 (S.D.N.Y. 2005), provides similar guidance.  In *Fedotov*, the same day that the plaintiff filed his bankruptcy petition listing a "Potential Claim under Fair Debt Collection Practices Act, Maximum Statutory Damages of $1,000" without identifying the putative defendant, he also filed a class action alleging violations of the FDCPA against the defendant debt collector. *Id.*  In response, the defendant argued that the plaintiff lacked standing.  **The Court correctly denied the defendant's motion, finding that the debtor's identification of a "potential claim" for violation of the FDCPA was sufficient to show that the Chapter 7 trustee abandoned the claim as <u>burdensome or of inconsequential value to the bankruptcy estate</u>**. *Id.*, at 475 citing *Brown v. O'Keefe*, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937); *Meyer v. Fleming*, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524 (8th Cir. 1991).  Finally, in *Eun Joo Lee, supra*, the debtor listed in Schedule B a claim against one debt collector but subsequently brought suit against a different debt collector.  In denying the second debt collector's motion to dismiss for lack of standing, the Court noted,

> **"[T]he Schedule provided sufficient information about Plaintiff's potential FDCPA claims for the trustee to have been able to make an educated decision not to bring the claims against both Defendants. Even though the Schedule did not list [the second debt collector] as a possible defendant in any FDCPA action, a minimal investigation by the trustee would have revealed that [the second debt collector] was a potential defendant in any such an action."**

*Id.*, at 490; see also *Levander v. I.C. Sys., Inc.*, No. 08-14241, 2011 WL 1630171 (E.D. Mich. Apr. 25, 2011) (debtor's bankruptcy petition Schedule B noted "Potential FDCPA Claims against Collection Companies" with a value of $1,000).

The critical and dispositive factor in the present matter is that Plaintiff had more than sufficient room under his respective Wildcard Exemptions, and, therefore, under no circumstances could the trustee assert an interest on behalf of the estate, which is clearly the reason as to why the trustee has abandoned the potential claims.

It is well settled that any assets listed in Schedule B that are not administered by the trustee by the time the bankruptcy case is closed are considered abandoned. See 11 U.S.C. § 554(C). Abandoned assets return to the debtor as if no bankruptcy petition was ever filed. See *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990) aff'd sub nom *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed. 2d 903 (1992). This rule was expressed by Justice Cardozo in *Brown v. O'Keefe*, 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937); see also *Rosenblum v. Dingfelder*, 111 F.2d 406, 409 (2d Cir. 1940). Such abandonment is irrevocable even if the trustee subsequently discovers that the abandoned asset has a value that is greater than what the trustee initially believed. See *In re Ozer*, 208 B.R. 630, 633 (Bankr. E.D.N.Y. 1997). "Mistakes in valuation will not enable the trustee to recover an abandoned asset." *Hutchins v. I.R.S.*, 67 F.3d 40, 44 (3d Cir. 1995). It is further irrevocable (absent the trustee asserting a claim of fraud) if no claim for the abandoned asset is made within thirty (30) days of the meeting of the creditors held under § 341(a) of the Code, or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. See Federal Rules of Bankruptcy Procedure ("FRBP") Rule 4003.

In *Nielsen*, the debt collector argued that because the debtor's Schedule B did not specifically list the debt collector as a potential defendant in the debtor's scheduled potential FDCPA action, the cause of action against it belonged to the trustee. However, it was undisputed that regardless of the specific defendant named, the debtor had exempted the value of the cause of action on Schedule C (like Plaintiff did here) and no objection to such exemption was filed (also like here) – both facts that the Court found dispositive. *Id.*, at *5. In rejecting the defendant's argument, the Court held:

> "We have found no case, and [defendant] presents us no case, where a bankruptcy petitioner included as exempt property her interest in a cause of action, failed to identify in her bankruptcy schedules all existing or potential defendants to that cause of action, and was later barred from proceeding against the unidentified defendants. In the present action, it is undisputed that [plaintiff] listed as exempt property her interest in 'a cause of action against [a different defendant] for violations of the Fair Debt Collection Practices Act.' Neither the trustee nor any creditors filed an objection to [plaintiff]'s claimed exemption for her FDCPA action against [the different defendant]."

In summary, The Trustee was fully aware of the potential claims, the Trustee is aware that potential FDCPA claims have a maximum value of $1,000.00, the Trustee has examined the Plaintiff and after reviewing the petition and the Plaintiff explaining the potential claims, the Trustee abandoned the claims and has discharged the Plaintiff; and Plaintiff could have utilized her available Wildcard Exemption for a mere potential award of $0.01 to $1,000.00.

For the reasons stated above, Plaintiff has a strong likelihood of prevailing with his appeal in *Misonzhnik v. Alltran Fin., LP*, No. 17-cv-6683, Dkt. Entry No. 17 (E.D.N.Y.) Nevertheless, in the instant matter, Plaintiff took a sensible position in good faith reliance on his understanding of the case law.  However, even if Plaintiffs position turns out to ultimately be a losing one, such a position truly does not merit a Rule 11 sanction.  In fact, the Second Circuit specifically stated in *Securities Industry Ass'n v. Clarke*, 898 F.2d 318, 321-322, 1990 U.S. App. LEXIS 3785, *9-10, Fed. Sec. L. Rep. (CCH) P94,966, 16 Fed. R. Serv. 3d (2d Cir. 1990):

> [I]t seems self-evident that when a particular point of law is unsettled, parties and (or) their attorneys need not accurately prognosticate the correct law in order to avoid sanctions.  Here, it was enough that [plaintiff] crafted a reasonable position based on existing precedents and in good faith reliance on [the case law and] Even if it is ultimately a losing one, such a position does not merit a Rule 11 sanction. In framing Rule 11, Congress intended to provide a prophylactic against abuse of the adversary system by attorneys. It did not, however, aim to design a disincentive to honest and effective representation of one's client. On more than one occasion, we have "remind[ed] judges to refrain from imposing sanctions where such action would 'stifle the enthusiasm or chill the creativity that is the very lifeblood of the law."  Today, we decline to stymie the necessary creativity, diligence and zeal involved in effective advocacy by our refusal to grant approbation to the Rule 11 sanction as imposed by the district court.

In light of the aforementioned facts, case precedent and that Section 521 of the Code "does not provide guidance as to the level of detail necessary in a schedule of assets and, as one court in this Circuit noted and several courts have addressed, the level of specificity with which debtors must describe assets in order to comply with 11 U.S.C. § 521(a)(1)"[1] at best is an area of the law that is unsettled.  Accordingly, Plaintiff has a strong likelihood in prevailing with his appeal and respectfully requests that they should not be sanctioned in the instant matter.

Thank you for Your Honor's time and attention to this matter.

Very truly yours,

/s/ Maxim Maximov

Maxim Maximov, Esq.

---

[1] *Eun Joo Lee v. Forster & Garbus, LLP*, 926 F.Supp.2d 482, 489 (E.D.N.Y. 2013) quoting *Tilley v. Anixter Inc.*, 332 B.R. 501, 509 (D.Conn. 2005); see also *Kuehn v. Cadle Co.*, No. 5:04-CV-432-Oc-10GRJ, 2007 WL 809656, at *4 (M.D. Fla. Mar. 15, 2007) ("The statute does not provide any guidance as to the level of specificity required" when listing assets on a bankruptcy Schedule B); *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992) aff'd 153 B.R. 601 (B.A.P. 9th Cir. 1993) aff'd 24 F.3d 247 (9th Cir. 1994) ("There are . . . no bright-line rules for how much itemization and specificity is required.").  Rather, the bankruptcy schedules have generally been held subject to a "rule of substantial compliance." *Id.*, citing Fed. R. Bankr. P. 9009 (Advisory Committee's note).